# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION – LEXINGTON

| | |
|---|---|
| **RETONYA PARTIN,** <br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL** <br> **Acting Commissioner of Social Security,** <br> Defendant. | **CIVIL ACTION NO. 5:18-415-KKC** <br><br><br> **ORDER AND OPINION** |

This matter is before the Court on cross-motions for summary judgment. (DE 10; DE 12.) The Plaintiff, Retonya Partin, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI. The Court, having reviewed the record, will affirm the Commissioner's decision because it is supported by substantial evidence and was decided by the proper legal standards.

## FACTUAL AND PROCEDURAL BACKGROUND

In the present case, Partin filed applications for Social Security disability and Supplemental Security Income benefits on April 25, 2013. (Administrative Record ("AR") at 378-387.) After being denied initially and upon reconsideration, Partin filed a Request for Hearing on November 21, 2013. (AR at 291-92.) Following the hearing, the ALJ issued an unfavorable decision on April 23, 2015. (AR at 234-59.) Partin filed an appeal with the Appeals Council. The Appeals Council remanded her claim back to the ALJ because (1) "the decision [did not] fully evaluate the claimant's subjective symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record, nor their impact on the residual functional capacity;" and (2) "the hearing decision does not contain an adequate evaluation of the treating source opinions

1

from Brian Ellis M.D., primary care physician." (AR at 262-63.) Following a new administrative hearing, the ALJ issued a second unfavorable decision on June 21, 2017. (AR at 72-101.) The Appeals Council denied review of the second decision on April 20, 2018. (AR at 1-7.) Thereafter, Partin filed this action. (DE 1.)

This Court's review of the decision by the ALJ is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

In denying Partin's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that the claimant has not engaged in substantial gainful activity since August 15, 2012, the alleged onset date. (AR at 80.)

At step two, the ALJ determined that the claimant has the following thirteen severe impairments: "degenerative disk disease/osteoarthritis of the cervical spine with pain/radiculopathy; thoracic spine pain; lumbar spine pain/lumbago; degenerative joint disease of the right shoulder with history of humerus fracture; bilateral arm pain by report; bilateral hand pain; polyarthritis/diffuse myalgias; fibromyalgia; chronic pain syndrome; history of possible seizure disorder/history of acute encephalopathy; posttraumatic stress disorder (PTSD); dysthymic disorder/depressive disorder/major depressive disorder without psychotic features; and generalized anxiety disorder." (AR at 80.)

The ALJ also found a "history of left renal lesion; Vitamin D deficiency; abdominal pain; insomnia; hyperlipidemia; elevated liver function tests; fatty liver; sinusitis; urinary tract infection; headache; hematuria; osteopenia/osteoporosis; pneumonia; chest pain; status-post hysterectomy; thrombocytosis; hyperkeratosis; vulva hyperplasia; acute bronchitis; gastroenteritis; fatigue; edema by report; perianal condylomata acuminatum." (AR at 80.) He

determined, however, that these impairments were non-severe, as they have been treated symptomatically or were mentioned as a matter of historical record. (AR at 80.) The ALJ further stated that none of these impairments required anything other than conservative care, and they had no more than negligible effect on the ability to work. (AR at 80.)

At step three, the ALJ found that Partin does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 81.)

Before proceeding to step four, the ALJ determined that Partin has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), subject to certain limitations. (AR at 83.) The ALJ found that she could occasionally push and pull using the upper extremities; can occasionally climb stairs and ramps; cannot climb ropes, ladders, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead; can frequently handle and finger; can occasionally operate foot controls; must avoid concentrated exposure to extreme cold, wetness, and vibration; cannot work at unprotected heights or around hazards such as heavy equipment; can understand, remember and carry out short, simple instructions and make simple work-related judgments; can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision; can manage and tolerate simple changes in the workplace routine; can adapt to the pressures of simple routine work; and can interact occasionally with supervisors, coworkers, and the general public. (AR at 83-84.)

The ALJ also found that the claimant's allegations of limitations and overall disability are not consistent with the medical or other evidence. (AR at 83-89.) Further, he gave little weight to the opinions of Partin's treating physician, Dr. Ellis, who opined that Partin is limited to less than sedentary work or is unable to work. (AR at 89-90.) The ALJ determined that Dr. Ellis's objective clinical findings were generally normal and did not support the severity of

3

limitations he endorsed. Thus, the ALJ concluded that Dr. Ellis based his assessments primarily on Partin's subjective complaints of pain, depression, and anxiety. (AR at 89-90.)

At step four, the ALJ found that Partin was unable to perform her past relevant work as an administrative assistant, registration clerk, or accounting clerk. (AR at 90.)

At step five, the ALJ determined, considering Partin's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that she can perform, and therefore she is not disabled. (AR at 90-91.)

**ANALYSIS**

Partin raises two challenges to the ALJ's decision. She first argues that the ALJ violated 20 C.F.R. § 404.1527(d)(2) by failing to state good reasons for rejecting "the uncontradicted medical opinion" from a treating source and erred in failing to give controlling weight to Dr. Ellis's opinions. (DE 10-1 at 7.) Second, Partin challenges the ALJ's credibility determination regarding her statements about her symptoms and contends that the ALJ's decision to discount her subjective complaints was not supported by the evidence. (DE 10-1 at 10.) She further argues generally that the ALJ failed to correct the errors found by the Appeals Council in issuing his second denial.

**I.     The ALJ's decision was supported by substantial evidence, and he provided good reasons for not giving the treating physician's opinions controlling weight.**

Partin challenges the ALJ's decision to give little weight to Dr. Ellis's opinions as a treating source. (DE 10-1 at 2.) She argues that there is not substantial evidence contradicting Dr. Ellis's opinions, and that the ALJ failed to give good reasons for discrediting them. (DE 10-1 at 7, 10.) *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) (holding that failure to give good reasons for denying controlling weight to a treating physician's opinion is not harmless error).

When an ALJ's decision is based on substantial evidence, it is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). The ALJ reviewed Partin's medical history and relied on substantial evidence—including Dr. Ellis's treatment notes, objective medical evidence, and opinion evidence by both examining and non-examining physicians—in determining that Partin was not disabled and able to perform light work with some limitations. (AR at 86-91.)

ALJ's must give "controlling weight" to opinions from treating sources "[i]f [they] find that a treating source's opinion … is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c). An ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight. *Id.* A finding that the treating physician's opinions are inconsistent with the record is a sufficient reason for discrediting those opinions. *Bledsoe v. Barnhart,* 165 F. App'x. 408, 412 (6th Cir. 2006).

Dr. Ellis issued multiple opinions stating that Partin was unable to work or was limited to less than sedentary work due to back pain, anxiety, depression, and multiple joint arthritis. *(See, e.g.,* AR at 589, 651-57, 789-95.) The ALJ gave these statements little weight partially because opinions that a person is "disabled" or "unable to work" are issues reserved for the Commissioner and thus are entitled to no special significance or weight. (AR at 90.) *See* 20 C.F.R. § 404.1527(d); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").

Further, Dr. Ellis's opinions are inconsistent with other substantial evidence in the record, including his own examination findings, and thus are not entitled to controlling weight. 20 C.F.R. § 404.1527(c); (AR at 89-90.) Outside of some findings of muscle spasm or tenderness, Dr. Ellis's objective findings, spanning several years, have been generally normal:

5

documentation shows normal range of motion; negative straight-leg raising tests; normal neurological functioning; normal sensory, reflex, and strength testing; and MRI studies of the thoracic and lumbar spine reveal no significant degenerative changes. (*See, e.g.*, AR at 539, 543, 552, 561, 566-67, 647, 713, 750-52, 895, 906, 914.)

Partin asserts that testing done at the Arthritis and Osteoporosis Center of Kentucky in 2016, which documented greater than eleven out of eighteen tender points, consistent with a diagnosis of fibromyalgia, is objective medical evidence supporting Dr. Ellis's opinions. (DE 10-1 at 9; AR at 652.) This testing does provide objective evidence in support of a diagnosis of fibromyalgia, but "a *diagnosis* of fibromyalgia does not automatically entitle [one] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). The ALJ did not question this diagnosis, as he found Partin's fibromyalgia to be a severe impairment. (AR at 80.) However, it does not automatically support Dr. Ellis's cited opinions that Partin is "unable to work," as that goes to the ultimate issue of disability, which is reserved for the Commissioner. (AR at 589, 651-57, 789-95.) *See* 20 C.F.R. § 404.1527(d); *White*, 572 F.3d at 286.

Dr. Ellis's records are also inconsistent with other objective evidence in Partin's medical history. Although Dr. Ellis's treatment notes reflect Partin's subjective complaints of neck, back, and joint pain, other medical records from examining physicians show normal ambulation; adequate movement of spine and extremities; full and active ranges of motion in the cervical and lumbar region; no evidence of weakness or atrophy, sensory loss, or reflex abnormality; normal grip, strength and dexterity; normal neurological function; normal mental status; normal range of motion; and ability to squat, heel/toe, and tandem walk without difficulty. (*See* AR 617, 1130.)

Dr. Ellis's opinion that Partin is unable to work due to mental impairments, such as anxiety and depression, are also contradicted by other objective evidence—treatment notes reflect improved mental status with prescribed medication and mental status examinations

6

show Partin fully oriented with intact concentration and judgment. (AR at 621-27, 642, 645, 694, 860, 1077-86, 1110-15, 1181, 1187.)

Dr. Ellis's opinions are further contradicted by other physicians' opinions, including the state agency medical consultant; state agency psychological consultant; Dr. Winkle, consultative examiner; and Dr. Fishkoff, consultative psychologist. The state agency medical consultant reviewed Partin's medical history and opined that Partin retains the capacity to perform light exertional work. (AR 89, 204-233.) The ALJ granted great weight to the state agency medical consultant's opinion as it was consistent with the overall objective evidence in Partin's medical history. (AR at 89.) The state agency psychological consultant reviewed Partin's medical history and opined that Partin's mental impairments are non-severe. (AR 89, 174-199, 204-233.) The ALJ gave this opinion little weight and concluded that the evidence reasonably demonstrates severe mental impairments with mild to moderate limitations. (AR at 89.) Dr. Winkle, the consultative examiner, identified some physical and mental limitations in his direct examination of Partin, but not to a disabling severity. (AR 89, 615-620.) He opined that Partin is able to perform light exertional work with some restrictions. (AR at 618.) The ALJ gave Dr. Winkle's opinion great weight as it was consistent with the overall evidence of record. (AR at 89.) Dr. Fishkoff, the consultative psychologist, also identified some physical and mental limitations in her direct examination of Partin, but not to a disabling severity. (AR at 89, 621-627.) She opined that Partin is able to maintain employment. (AR at 626.) Dr. Fishkoff observed, among other things, that Partin's impairments appeared amendable to treatment; her pain, depression, and anxiety do not interfere with her mental status; she has a fair ability to tolerate frustration and conform to social standards; she has adequate ability to understand, retain, and follow instructions; she has the ability to sustain attention to perform simple and repetitive tasks; and she appears to be capable of tolerating the stress and pressures associated with day-to-day work activity. (AR at 626-627.) Dr. Fishkoff's opinion was also consistent with

7

the overall evidence of record, and thus the ALJ afforded it great weight in determining Partin's ability to perform light work. (AR at 89.)

Given the contradictory opinions and lack of objective medical findings to support the limitations Dr. Ellis endorsed, the ALJ reasonably concluded that Dr. Ellis based his assessments primarily on the claimant's subjective complaints of pain, depression, and anxiety. (AR at 90.) The ALJ found that Dr. Ellis's opinions are inconsistent with the evidence of record, which provided a sufficiently good reason to discredit them. (AR at 90.) *See Bledsoe*, 165 F. App'x. at 412.

In contending that Dr. Ellis's opinions are supported by the record, Partin points to the lengthy record in which she sought continuous medical treatment for persistent complaints of severe and increasing pain. (DE 10-1 at 8.) While the length of a treating relationship is a relevant factor in how much weight to give an opinion, based on the record, the ALJ found other considerations, such as the supportability and consistency of the opinion, of greater import. (AR at 86-90.) *See* 20 C.F.R. § 404.1527(c)(2-4).

Partin also notes that in his March 2014 medical source statement, Dr. Ellis cited findings including reduced range of motion, muscle weakness and swelling, and tenderness. (DE 10-1 at 9; AR at 652.) However, these findings do not undermine the ALJ's decision to discount Dr. Ellis's opinion, which was supported by valid reasons and grounded in substantial evidence. They suggest the evidence of record could support a different conclusion, but that is not a proper basis for remand. "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). When an ALJ's decision is based on substantial evidence, it is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman*, 693 F.3d at 713. The ALJ based his decision on substantial evidence, including vast medical records supporting Partin's ability to perform light

8

work, Dr. Ellis's treatment notes supporting Partin's ability to perform light work, examining physicians' opinions that Partin could perform light work, the state agency medical consultant's opinion that Partin could perform light work, and the state agency psychological consultant's opinion that Partin's mental impairments were non-severe. (*See* AR at 84-90.) The Court finds that a "reasonable mind might accept" the foregoing evidence as adequate to support the ALJ's determination that Partin has the ability to perform light work with some restrictions. Accordingly, the ALJ's decision must stand since it is supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 859 F.2d 1024, 1028 (6th Cir. 1990).

## II. The ALJ's decision to discount Partin's subjective complaints was supported by substantial evidence.

Partin argues that the ALJ erred in discrediting her subjective symptoms and allegations of impairment when determining her RFC. (DE 10-1 at 10; AR at 86.) The ALJ determined that "the objective findings documented do not substantiate the level of severity she describes or the alleged loss of functioning" based on the medical and other evidence. (AR at 86.) Partin claims there is no substantial evidence to support this finding. (DE 10-1 at 10.) She cites three opinions issued by Dr. Ellis that she is unable to work and her long, well-documented history of complaining of and receiving treatment for pain, which she claims support her testimony of debilitating impairments. (DE 10-1 at 10-11; AR at 538, 589, 651-57, 789.)

ALJs use a two-part analysis in evaluating complaints of disabling symptoms: (1) the ALJ will ask whether there is an underlying, medically determinable, physical impairment that could reasonably be expected to produce the claimant's symptoms; and (2) if the ALJ finds that such an impairment exists, he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. 20 C.F.R. § 404.1529; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). In evaluating a claimant's severity of symptoms, relevant factors include: (i) the individual's daily activities; (ii) the location, duration,

frequency, and intensity of the pain; (iii) factors that precipitate and aggravate symptoms; (iv) the type, dosage, effectiveness, and side effects of medication; (v) the treatment the individual receives or has received for relief; (vi) any other measures the individual has used to relieve pain; and (vii) any other factors concerning the individual's functional limitations. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record," including medical signs and laboratory findings, the claimant's own complaints of symptoms, any information provided by treating physicians and others, statements by persons familiar with how the claimant's symptoms may affect her daily life, and any other relevant evidence contained in the record. *Rogers*, 486 F.3d at 247; 20 C.F.R. § 404.1529(c)(4). An ALJ is required to evaluate the claimant's symptoms and diminish her capacity for basic work activities to the extent that her alleged functional limitations and restrictions due to her symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. Courts generally must defer to an ALJ's credibility determination because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Duncan v. Secretary of HHS*, 801 F.2d 847, 852 (6th Cir.1986) (quoting *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957 (1983)). However, the ALJ's determination must contain specific reasons for the weight given to the claimant's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the claimant and any subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Rogers*, 486 F.3d at 247-48; Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).

Partin's medical records reveal complaints of neck, shoulder, lower back, and diffuse body pain dating back as early as 2010. Her records show that her pain was treated with a variety of narcotic pain medications, muscle relaxants, and neuropathic agents with some success. Her records further show a history of anxiety and depression, which has been treated with counseling and various medications, also with some success. The ALJ found that Partin "made statements consistent with the general nature of her impairments." (AR at 86.) However, the ALJ also determined that Partin "made statements not entirely consistent with the medical and other evidence, particularly with regard to her allegations of limitations and overall disability." (AR at 86.) The ALJ continued that the "objective findings documented do not substantiate the level of severity she describes or the alleged loss of functioning, and are insufficient to show preclusion from work activities on a sustained basis." (AR at 86.) The ALJ found Partin's description of symptoms and limitations "unpersuasive" and cited a variety of evidence in support of his conclusion. (AR at 86-90.)

The ALJ relied, in part, on Partin's presentation and demeanor at two hearings in assessing Partin's credibility. At the first hearing, the ALJ observed Partin walk into and out of the hearing room without any walking problems, and she did not appear to be in distress. (AR at 84.) Partin also sat-down and stood without any apparent problems. (AR at 84-85.) Partin was observed stretching her arms and rubbing her back with her left hand. (AR at 85.) She also "rocked at the waist" and talked expressively using her hands and arms. (AR at 85.) At the second hearing, the ALJ observed Partin sit and stand without difficulty. (AR at 85.) Partin was observed stretching, talking expressively with her hands, bending side to side, and reaching to touch her back with her left hand. (AR at 86.) She also raised her left arm overhead while talking and was observed exiting the hearing room quickly and without apparent difficulty. (AR at 86.)

11

The ALJ further found Partin's ability to perform daily activities inconsistent with the alleged severity of her symptoms. The ALJ stated that Partin's "daily activities are not as limited as one would expect given the complaints of disabling symptoms and limitations, and would not preclude all work activity." (AR at 89.) The ALJ concludes that "such wide variation between the claimant's alleged level of symptoms and the objective medical evidence give rise to a concern of validity of other information, but does not substantiate further limitations." (AR at 89.) The ALJ considered functional data showing that Partin was "able to perform fundamental and instrumental daily activities (i.e., personal care, household chores, laundry, simple mal preparation, paying bills, etc.)." (AR at 81, 88-89.) The ALJ considered Partin's report that she is able to drive, travel independently, and perform some grocery shopping. (AR at 81, 89, 464-71.) Additionally, Partin's mother, Elizabeth Partin, stated that Partin has no problems with personal care. Elizabeth further stated that Partin can prep simple meals, do light household chores, drive and travel independently, shop up to an hour at a time, and that she occasionally attends church services. (AR at 438-46.)

In finding Partin's description of her physical symptoms and limitations "unpersuasive", the ALJ cited evidence including: examinations by Dr. Ellis inconsistent with debilitating physical limitations[1]; an opinion from the state agency medical consultant stating that Partin retains the capacity for light exertional work with some postural and manipulative restrictions; an evaluation by neurosurgeon Dr. William Brooks finding that Partin had a normal gait, normal curvature of the spine, no evidence of nerve root or spinal cord compression, and full and active ranges of motion in the neck and lower back with no weakness or atrophy; and an evaluation by consultative examiner Dr. David Winkle showing normal grip and dexterity,

---

[1] Dr. Ellis's treatment notes reflect a normal range of motion; negative straight-leg raising tests; normal neurological functioning; normal sensory, reflex, and strength testing; and MRI studies of the thoracic and lumbar spine reveal no significant degenerative changes. (*See, e.g.*, AR at 539, 543, 552, 561, 566-67, 647, 713, 750-52, 895, 906, 914.)

12

normal ranges of motion, a normal gait, ability to ambulate without an assistive device, ability to squat, ability to heel/toe walk, ability to tandem walk, and opining that Partin could lift and carry forty pounds occasionally and twenty pounds frequently. (AR at 86-87; see AR at 204-33, 566-67, 615-20, 958, 1128-30.) The ALJ also noted that the record indicated that Partin saw some benefit from medication and physical therapy. (AR at 86-87.) See 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (symptom evaluation should include consideration of the effectiveness of medication and other treatment).

With respect to Partin's mental limitations, the ALJ determined that Partin's "level of functioning, as demonstrated by the evidence of record, outweigh[ed] her allegations of overwhelming symptoms." (AR at 88.) The ALJ found that "the evidence of record fails to document or support that the claimant's basic abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have ever been significantly impaired on any documented long-term basis." (AR at 88.) In reaching this conclusion, the ALJ considered the following: treatment notes reflecting improved mental status with prescribed medication; mental status examinations showing Partin fully oriented with intact concentration and judgment; Partin's minimal difficulty with daily tasks, such as personal care, preparation of simple meals, driving and travelling independently, and performing light household chores; Dr. Fishkoff's observations that Partin appears capable of tolerating the stress and pressures associated with day-to-day work activities, has fair ability to tolerate frustration and conform to social standards, has adequate ability to understand, retain, and follow instructions, has ability to sustain attention to perform simple and repetitive tasks; Dr. Fishkoff's opinions that Partin's impairments appear amendable to treatment, that her pain, depression, and anxiety do not interfere with her mental status, and that she is able to maintain employment; and opinions from two state agency psychologists stating that Partin's

mental impairments were non-severe.  (AR at 82, 88-89, 179-81, 211-12, 438-46, 464-71, 621-27, 642, 645, 694, 860, 1077-86, 1110-15, 1181, 1187.)

The foregoing portions of the record, cited by the ALJ in support of his decision, meet the substantial evidence standard, which merely requires that a reasonable mind might find this evidence adequate to support his conclusion. (AR at 86); *Longworth*, 402 F.3d at 595.  "When an ALJ has examined the record as a whole and his decision is supported by substantial evidence, this Court must affirm the ALJ's decision—even if the Court might have decided the case differently." *Stolz v. Berryhill*, No. CV 18-136-DLB, 2019 WL 2291466, at *3 (E.D. Ky. May 29, 2019) (citing *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).  The evidence Partin cites does not defeat that cited by the ALJ, as a decision based on substantial evidence is not subject to reversal, even if other evidence would have supported the opposite conclusion. *Ulman*, 693 F.3d at 713. Further, the evidence Partin cites to support her argument, the disabling opinions of Dr. Ellis—to which the ALJ gave little weight due to their inconsistency with the record—and her documented history of complaining of pain are ultimately both borne out of her subjective complaints of pain, and thus subject to the ALJ's credibility determination.  *See* (AR at 89-90.); *Walters*, 127 F.3d at 531.  The ALJ's credibility determination is to be given great weight. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). The ALJ cited specific reasons, including Partin's presentation and demeanor at both hearings, functionality assessments by Partin and her mother, objective medical evidence, and opinion evidence from examining and non-examining physicians, to support his decision to discredit Partin's testimony.  Even though Partin's claimed mental and physical limitations lack full support from her medical records, the ALJ still afforded Partin some benefit of the doubt in determining her RFC.  (AR at 89.)  The

ALJ explained why he was discounting Partin's subjective complaints regarding her limitations, highlighted inconsistencies in the record, and determined an RFC that was supported by the overall evidence. Accordingly, reversal is not warranted on this issue. (AR at 82, 86-89); *Ulman*, 693 F.3d at 714.

### III. The Court does not have jurisdiction to decide whether an ALJ's second opinion complies with an Appeals Council's remand order.

Partin also claims that in issuing his second denial, the ALJ failed to correct the errors found by the Appeals Council. (DE 10-1 at 11.) In its order remanding Partin's case back to the ALJ, the Appeals Council found that the ALJ's first decision "[did] not fully evaluate the claimant's subjective symptoms … nor their impact on the residual functional capacity," and "[did] not contain an adequate evaluation of the treating source opinions from Brian Ellis, MD." (AR at 262-63.) Partin further argues that the ALJ erred by assigning a substantially similar RFC in his second denial to that in his first.

District courts, including those in this circuit, are split on whether they have jurisdiction to determine if an ALJ complied with the specific instructions of a remand order from the Appeals Council. *See Caldwell v. Colvin*, No. CIV.A. 13-131-DLB, 2014 WL 3747548, at *3 (E.D. Ky. July 29, 2014). Some courts have held that there is no jurisdiction to consider whether the ALJ complied with a remand order because it is an internal agency matter. *See, e.g., Burke v. Comm'r of Soc. Sec.*, No. 1:13-cv-96-CLC-SKL, 2014 U.S. Dist. LEXIS 87085, at *14-16 (E.D. Tenn. June 4, 2014); *Riddle v. Astrue*, No. 2:06-00004, 2009 WL 804056, at *19 (M.D. Tenn. Mar. 25, 2009) ("Because the district court does not review internal, agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand."); *Brown v. Comm'r of Soc. Sec.*, No. 1:08CV183, 2009 WL 465708, at *4-6 (W.D. Mich. Feb. 24, 2009). Other courts have held that where an ALJ's decision fails to comply with a remand order, it must be reversed. *See Salvati v. Astrue*, No. 3:08–cv–494, 2010 WL 546490, at *5 (E.D.Tenn. Feb. 10, 2010).

15

This Court agrees with the reasoning in *Brown*. 2009 WL 465708 at *5. There, the *Brown* Court explained why district courts lack jurisdiction to consider a plaintiff's claim that the ALJ failed to comply with an Appeals Council's remand order. The *Brown* Court pointed out that Federal Courts have limited jurisdiction and only possess powers authorized by statute or the Constitution. *Id*. The *Brown* Court continued that district courts get their authority to review Social Security decisions from 42 U.S.C. § 405(g), which provides:

> Any individual after any final decision of the Commissioner made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner may allow.

*Id*.

To determine the definition of "final decision," the *Brown* Court looked to the Social Security Regulations, which provide a four-step administrative review process. *Id*. This process includes: (1) an initial determination; (2) reconsideration; (3) hearing before an administrative law judge; and (4) Appeals Council review. Thus, the *Brown* Court concluded that "[w]hether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision," and accordingly, district courts do not have jurisdiction under § 405(g) to assess an ALJ's compliance with an Appeals Council remand order. *Id*. at *6.

This Court agrees with the *Brown* Court and finds that it does not have jurisdiction to assess whether the ALJ complied with the Appeals Council's remand order. Judicial review of an ALJ's decision is limited to determining whether it was supported by substantial evidence and decided by the proper legal standards, *see Rabbers*, 582 F.3d at 651, which this Court addressed above. Accordingly, the Court will not consider Partin's further allegations of noncompliance with the remand order. The Court does note, however, that the Appeals Council affirmed the ALJ's second opinion, suggesting that the Appeals Council deemed the second opinion in compliance with the remand order. *See Brown*, 2009 WL 465708 at *6 ("By failing to

remand the matter a second time, it appears that the Appeals Council considered the ALJ's [second decision] to be in compliance with the Council's previous order of remand.").

## CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1) The Plaintiff's Motion for Summary Judgment (DE 10) is **DENIED**;

(2) The Defendant's Motion for Summary Judgment (DE 12) is **GRANTED**;

(3) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) A judgment will be entered contemporaneously with this order.

Dated July 31, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY